Next case on the docket, Clark v. Fragrant 40, and all. Alright, Mr. Bullock for the appellate. Please proceed. Thank you, Your Honor. May it please the Court, good morning. I'm appearing on behalf of Tosh Pork, and we appreciate the privilege of being before you this morning on this issue. This case, which is in essence a claim for private nuisance, should be heard by a Coupon County jury in a venue and forum where both the facility that's under issue is located, the majority of the witnesses are there, and the plaintiffs live in that county. When the Court undertakes a balancing of the public and private factors that Illinois courts consider in analyzing foreign non-convenience issues, that balancing test strongly favors a transfer to McCoupin County as a matter of fundamental fairness and sensible judicial administration, as the cases have indicated. Indeed, the only factor that might normally favor the plaintiffs, which is their choice of a forum, is not a significant factor in this case because neither the plaintiffs live in the chosen forum, nor is the matter that is alleged to be a nuisance located in that forum. Using what is called in the Daugherty case as the, quote, relevant factors, an analysis of those factors strongly support this transfer. Excuse me, do any of the defendants live in McCoupin? The defendants, the Fraga 40 LLC is located there. Any of the actual? The other ones do not, Your Honor. Okay. Mr. Ron Sebaugh had been a defendant, but is no longer a defendant, and Jeff Sebaugh, who's a defendant, is in Moore County. Okay. Why is it that a nuisance case should be brought in the county in which the nuisance occurred? Under the relevant factors in Woods v. Conn, juries look at whether or not a facility is a nuisance based on questions such as, are the defendants engaged in a useful enterprise? Is it well-pursued for this type of facility, such as a livestock facility? And those are cases that can only be answered in a local setting. The appropriateness of the residents of McCoupin County addressing those issues is far more in the line of fundamental fairness than having a jury in St. Clair County, a county with no relation to the issue, with five times the population deciding what is appropriate for a county such as McCoupin, which has a rural agricultural-based economy. On top of the nuisance factors, the issue then becomes, and nuisance dovetails well with both the public and private factors that the court undertakes to analyze. For example, the public factors that come under case are whether or not a local jury is determining a local interest, and whether or not a particular agricultural activity is uniquely a question of local interest for a county such as McCoupin. Correspondingly, there's no reason that a St. Clair County jury would have any interest in determining whether a livestock facility is an appropriate activity for McCoupin County. That dovetails nicely with whether or not the judicial resources analysis of the public factors indicate that there's any reason that St. Clair County's judicial resources should be expended to make this determination for another county. Did the trial court get into looking at how rural McCoupin County is or how rural St. Clair County is in making its ruling? Your Honor, there's no indication that the trial court did that. The order basically says the plaintiff's motion to transfer is denied. So there's no evidence in the opinion that there was any balancing of the factors, which under the Finnell case in which the court in its opinion, the trial court in its opinion, undertook some of the analysis of some of the factors but not all of them, the Finnell court emphasized that trial courts need to analyze all of the factors. So there's no indication that there was any, at least in a written format, any analyzing of those factors. Was it argued, though, before the trial court? The arguments were presented to the trial court. That's correct, Your Honor. Mr. Bullock, is the facility operational now? The facility, to my understanding, is capable of being operated. It's still licensed under the Illinois Department of Agriculture. I don't believe there are any pigs in the facility as of right now. Would that impact then the issue, the question of viewing whether or not it would be relevant to view the actual farm where the pigs are raised? No, Your Honor, that's interesting because the plaintiffs have chosen to bring a nuisance action. And the test of nuisance is, is there interference in the use and enjoyment of the plaintiff's property at the plaintiff's property, not at where the facility would be located? They've injected the issue of alleged air and potential water contamination at their residences. So it's important, the jury view, and we've not consented that we would or would not be in favor of a jury view, but they've injected not only. But is that your choice? Doesn't the court determine whether or not? We don't want to be seen as waiving an objection to that. Oh, okay. But the key focus in nuisance cases is what's going on at the plaintiff's homes. Well, I understand that, but if their complaint is foul odor from pigs being raised at that facility and there are no longer pigs, wouldn't that obviously have an impact on what their ability is to enjoy their property via what's happening at the pig farm? Well, Your Honor, there is still manure in pits. It's still, in our understanding, still being land applied. But we are so early in the case, there's been no evidence to indicate whether or not the facility is ever going to be operated again. It's our understanding that the facility is capable of being operated. It has not been ordered closed by the Illinois Department of Agriculture or the Illinois EPA. And that goes to a greater issue of there are other livestock facilities in Macoubin County. And so it goes back to the question of is it appropriate for jurors in another county to determine whether or not that particular activity is appropriate for a county like Macoubin. And that issue dovetails in both the public factors, which Your Honor brought out about the jury leave, but also some of the private factors as well. In conducting the balancing test, as we pointed out earlier, there is a general rule that the plaintiff's choice is allowed to have significant weight. In this case, given the location of the facility and the location of where the plaintiffs live, neither of which in St. Clair County, both the Fennel Court and the Daughty Court indicated that that's not allowed to have any weight or deference to the extent it might normally have under those circumstances. Instead, when you look at the public factors and the private factors to conduct that balancing test and then add what the factors for that this is a nuisance case, which the Comcast products decision says nuisance cases should be decided by local juries in the area where the facility is located, that all of the weight and all of the balancing tests we believe indicate that the fundamental clearance would require a transfer of this matter to Macoubin County. Counsel, you've cited several factors or argued several factors would tip the scale. Of course, we're looking at not how we would have ruled in the trial court, but did the trial court judge abuse his discretion in making this ruling? What factors should we hang our hat on if we were to rule for you? Which one tips the scale? Your Honor, I believe the fact that it's a nuisance case and the nuisance cases have been held to be appropriately to be tried in the county in which the alleged nuisance is located. It's interesting. You can't know the court describes it this way, but it's almost like a super factor that in addition to the other balancing factors has an impact on that. Would it be different? We've got adjoining counties here, Macoubin and St. Clair adjoined, do they not? I believe, Your Honor, that's correct. I want to say the distance is like 75 miles difference between the one and the other in terms of distance, but I can't say that with certainty. You're not saying that they – I don't think they do adjoin. No, then you – Madison and Macoubin do. Madison and Macoubin do. I know that. I don't believe that St. Clair and – You said 75 miles between? My understanding is the distance from the facility to the Macoubin County Courthouse is, I believe, approximately 30 miles and approximately 75 miles from the facility to St. Clair development. Math is not the strongest point, Your Honor. So to answer your question, at the end of the day, there are no factors that favor St. Clair County at all. So if you have a balancing test, the only one you can put in any particular way to St. Clair would have been a plaintiff's choice, which is now not declared to have the significant difference it would normally have, versus the vast majority of the public and private factors weighing in favor of Macoubin County and the nuisance action in which, as accomplished product said, local issues need to be decided by local jurors. So there really is – there's really no support legally with any weight that would require maintaining this action in St. Clair County. Do you think it's of any importance that the Thompson case was, I think, a venue-fixing case rather than – it wasn't a form-nonconvenience case. It wasn't, Your Honor. That's correct, Your Honor. But I think the analysis is the same because what's interesting is, I think, you can look at a venue decision as being statutory, form-nonconvenience. Historically, it's always been an equitable decision, and I actually think that the analysis in that case, from an equitable standpoint, is even stronger. But that wasn't an equitable decision. No, but what I'm saying is a form-nonconvenience matter slides more toward being equity, and I think that the analysis of why you have a local jury deciding local issues is equally, if not more, appropriate when you slide over to more of an equitable analysis. I'll – I don't know if I can reserve my time, but I'll get back to the response. All right. Argue for the accolade. Thank you, Your Honor. May it please the Court, Craig Shevlin on behalf of the plaintiffs. I think it's remarkable that in their brief, the defendants raised neither Fennell nor Langenhorst in their opening brief. It was only in their reply brief that they brought those up, and those are clearly the law in the state of Illinois when it comes to form-nonconvenience. I think that there are a few things that their arguments tend to overlook. First, they present the arguments saying, in essence, that we haven't met a burden of proof, which obviously is not the law. Its defendants' burdens show that our chosen form is inconvenient to them, and they clearly have not met that burden. They would likewise not have shown that Judge Lopino abused his discretion. Again, that's their burden. They have not, therefore, presented this Court with the exceptional circumstances described in the case law that the interests of justice require trial in the court of appeal. Nothing presented strongly favors transfer, which is what – which is defendants' burden to present. I don't think that either of these defendants can and have shown that St. Clair County is inconvenient to them, nor can they show that when you examine all the private and public interest factors, it's not a balancing of private versus public. It's a balancing of all those factors, as you all know, that the interests of justice require transfer. It's plaintiff's choice of venue – I'm sorry, forum in most cases will prevail, and this case is no different than those. So we look at the total circumstances, and we see that the balance of these factors does not strongly favor recoupment over St. Clair County. We're not talking about a situation that is like what was presented to the final court. Intrastate and interstate forum cases, the analysis is just a bit different. I mean, the factors that they examined are the same, but the – the Fennell case, you'll remember that the court focused on the fact that – or they mentioned prominently, I would say, the fact that the plaintiff had already chosen the forum in Mississippi, dismissed his case, and then came up here. So I think that when they were looking at that case and they were balancing the factors, they – like it says in the opinion, in intrastate, they are trying to determine what is the most appropriate state. We're not trying to determine in intrastate forum cases what is the most appropriate. We're trying to decide whether the plaintiff's chosen forum is inconvenient to the defendants, and it is their burden to present that. I think that the one thing that they bring up in their reply brief that the Fennell court did talk about is that they encouraged trial courts to be more specific in their findings and address the private and public interest factors that go into the analysis. The Langenhorst case and the Fennell case, too, or Fennell, I call it Fennell. I think it's because I watch the cooking channel. I don't know. But the factors that are listed in those cases are the factors that we're supposed to look at. In some of the older cases, which they cited, there are some additional factors. Now, maybe the factors in the newer cases are sort of an amalgamation of those factors, but if you look at the public and private interest factors of Langenhorst and Fennell, you're going to see that there is nothing that is compulsory on this court to overturn Judge Loveno's decision. But what I was going to get to with the Fennell court, they talked about encouraging the trial court to be specific. And if you are inclined to believe that the court's order was somehow insufficient under the Fennell case, then I would suggest that it be sent back with instructions to make specific findings as opposed to outright overturning the order, which is what I think defendants want you to do in their reply. I don't think that that's what the Fennell court intended, nor do I think it's what that decision compels this court to do. I think that you don't automatically make a finding contrary to what the trial court says in their order just because the order is not specific. We don't have any control over what Judge Loveno puts in his orders. You guys do. So if you send it back with those instructions, that would take care of it. But, again, it's their burden to prove that this forum is not convenient. They have not done that. Thank you. Thank you, counsel. Please proceed. Thank you, Your Honor. It's important to point out that each case is unique. The factors are the same, but each analysis is different. The plaintiffs in this case, the athletes, have made no showing. And you're right. The counsel is correct. The burden is on Tosh Fork to determine, to at least point out, to carry the burden of proof. And in this instance, we have done that. There is no factor, either public or private, that the plaintiffs have been able to point that supports keeping this matter in St. Clair County. The issue is in the Finnell case, and I apologize if I mispronounce that. South Carolinians, where I'm a native, love to make words three syllables when they're normally two. The Finnell has a, if you undertake the Finnell analysis, there has to be some indication of how those factors were balanced. There is no indication whatsoever that any of these factors were balanced, at least that this court can determine. In looking at that, then, this court can, instead of remanding it back for additional analysis, the court has the ability to look at this and determine whether or not there was an abuse of discretion and whether or not any factors would favor maintaining it in St. Clair, as opposed to the vast majority of the factors which weigh heavily toward transferring this to Macoupin. There are, and at the end of the day, this case is going to involve witnesses and facilities in Macoupin County, including witnesses or potential surrounding neighbors who are always important in these cases. There is simply no reason that, from a convenience standpoint, from a legal standpoint, from an equitable standpoint, that St. Clair County has any interest in trying this case. Instead, given the nature of the case, is it appropriate for this court to remand this to the trial court in order to have it transferred to Macoupin County? I don't think we have any further questions, counsel. Thank you. We will take this case under advisement. And we're going to take a short recess before we call the 10 o'clock cases.